Kenneth S. Mitchell-Phillips, Sr. WSBA No. 47720

**THE LAW OFFICES OF KEN MITCHELL-PHILLIPS, P.C.**

650 N.E. Holladay St., Suite 1600

Portland, Oregon 97232

Phone: 1-888-335-0161

Fax:  971-231-2002

info@lawofficesofkenmitchellphillips.com

Of Attorneys for Q Nightclub and Lounge, Adrian Kallimanis, and Jose Parra

<div align="center">

**UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF WASHINGTON**

</div>

| | | |
|---|---|---|
| **Q NIGHTCLUB AND LOUNGE,**<br>**a Washington corporation, ADRIAN**<br>**KALLIMANIS, an individual**<br>**And JOSE PARRA, an individual** | ) ) ) ) | Case No. 3-17-cv-5262 |
| **Plaintiffs** | ) ) | **COMPLAINT**<br>**Civil Rights Violations**<br>**(42 U.S.C. §§1981, 1983,** |
| **vs.** | ) ) | **1985, 1986, & 2000)** |
| **CITY OF VANCOUVER, a Washington**<br>**Municipal corporation, and C-Tran, a**<br>**Washington municipal corporation,**<br>**RICK GARZA, an individual,**<br>**JAMES MCELVAIN, PH.D., an individual**<br>**TIMOTHY LEAVETT, an individual,**<br>**JOE MOLINAR, an individual,**<br>**ADRIAN KALLIMANIS, a landlord, and**<br>**JOSE PARRA, a landlord** | ) ) ) ) ) ) ) ) ) ) | **(Intentional Interference**<br>**with Business Relations;**<br>**Intentional Infliction of**<br>**Emotional Distress;**<br>**Breach of Contract)** |

Plaintiffs, Q Sports Bar & Grill (hereinafter "Q" or "Plaintiff"), Adrian Kallimanis (hereinafter "Mr. Kallimanis"), and Jose Parra (hereinafter "Mr. Parra") by through their attorney,

1 - COMPLAINT



Ken Mitchell-Phillips of The Law Offices of Ken Mitchell-Phillips, P.C. allege the following against Defendants, City of Vancouver (hereinafter "the "City") and C-Tran (hereinafter "C-Tran") (the "City" and "C-Tran" hereinafter collectively referred to as the "Defendants"),:

## NATURE OF THE CASE

1.     This is a case about unnecessary and illegal obstacles to success that are knowingly and systematically placed in the way of black and Hispanic club owners, clubs catering to black and Hispanic people, and clubs playing music appealing to black and Hispanic people.  Plaintiffs will refer to such clubs collectively below as "minority clubs." The facts alleged below are not unique. The City of Vancouver (hereinafter "the City") has a long and shameful history of knowingly and intentionally treating minority clubs differently. This continuing history amounts to a custom or policy.

2.     Plaintiffs, Mr. Kallimanis and Mr. Parra, are the owners of the former Vancouver nightclub (hereinafter collectively referred to as the "Owners") known as the Q Nightclub and Lounge (sometimes referred to below as "the Club" or the "Q").  The Q was a minority club.  The Owners opened the Q to provide an entertainment venue in Vancouver featuring hip- hop music. The Q opened on a busy commercial street in Vancouver on 704 Main Street on or around November 2011.   Thereafter, the City, through its Police Bureau (hereinafter "PPB"), its Fire Bureau, the Mayor's office, C-Tran, Rick Garza, director of the Washington State Liquor and Cannabis Control Board (hereinafter "WSLCB"), the other individual defendants, and several other individuals referred to but not named as defendants, worked in concert, conspired or acted in furtherance of a conspiracy, to severely limit the Owners freedom to operate their business and ultimately to close the Q.

3.     The racially-discriminatory conduct of these public bodies and individuals, described below, violated the rights and privileges afforded to the Owners and their business under the United States Constitution, including the freedoms of speech, expression and association guaranteed by the First Amendment, their right to due process and equal protection guaranteed by the Fourteenth Amendment, as well as state common law.   Defendants' actions forced the Owners and their company out of business, resulting in significant economic harm, as well as significant pain and suffering including mental, physical, and emotional distress.

4.     Public officials and employees, in practice, treated (and continue to treat) similarly

KMP
KENNETH MITCHELL-PHILLIPS
ATTORNEY AT LAW
650 N.E. Holladay St., Suite 1600
Portland, Oregon 97232
Phone: 1-888-335-0161 | Fax: 971-231-2002

situated clubs with non-black or non-Hispanic owners and clubs that did not cater to black individuals or play hip-hop music with much greater leniency and respect. This action seeks damages for violation of the Plaintiffs' civil rights and injunctive relief allowing black and Hispanic clubs to operate in Vancouver free of discriminatory treatment.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over Plaintiffs' claims of violation of federal constitutional rights pursuant to 28 U.S.C. §§ 1331(a) and 1343 because the causes of action arise under 42 U.S.C. §§ 1981, 1983, 1985, 1986, & 2000. This Court has jurisdiction over Plaintiffs' pendent state law claims under 28 U.S.C. § 1367.

6.    Venue is proper in the Western Washington District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the District of Oregon and because Defendants are subject to personal jurisdiction in the Western Washington District.

## PARTIES

7.    At all times material hereto, Plaintiff, Q Lounge and Night Club, Inc., was a domestic business corporation registered in Washington and doing business in Washington.

8.    At all material times, Plaintiff, Adrian Kallimanis, was a resident of Washington, and co-owner and registered agent of the Q Sports Bar & Grill and an authorized representative of the Q Sports Bar & Grill.

9.    At all material times, Plaintiff, Jose Parra, was a resident of Washington, and co-owner of the Q Sports Bar & Grill, and an authorized representative of the Q Sports Bar & Grill.

10.    Defendant, City of Vancouver, was and is a municipal corporation operating under Washington law.

11.    Defendant, C-Tran, was and is a municipal corporation, operating under Washington law.

12.    At all material times, Defendant James McElvain, Ph.D. was employed by the City as the Captain of Vancouver, Washington's Police Bureau. He is sued in his individual capacity

13.    At all material times, Defendant, Joe Molinar, was employed by the City as the Chief of the Fire Bureau. He is sued in his individual capacity.

14.    At all material times, Defendant Timothy Leavitt, was the Mayor of the City. He is

KMP
KENNETH MITCHELL-PHILLIPS
ATTORNEYS AT LAW
650 N.E. Holladay St., Suite 1600
Portland, Oregon 97232
Phone: 1-888-335-0161 | Fax: 971-231-2002

sued in his individual capacity.

15.     At all material times, Defendant Rick Garner, was the Director of the OLCC. He is sued in his individual capacity.

16.     All Defendants acted under color of state law at all times relevant to this complaint.

### PROCEDURAL REQUIREMENTS

All administrative prerequisites to filing this action have been timely filed. Plaintiffs sent a notice of tort claims on April 14, 2016, within 180 days of the tortious conduct described herein.

### FACTUAL ALLEGATIONS

A.     **History of The City's Discrimination Against Minority Clubs.**

17.     From the founding of the City of Vancouver until the 1960s, the City of Vancouver has implemented policies that promoted racial discrimination.   In the 1950s, after a dramatic increase in African Americans during the preceding decade, the City of Vancouver refused to allow public housing and perpetuated an atmosphere of racial intolerance that led to the African American population dramatically decreasing.  Many African American migrants who had wished to stay in Vancouver after the war's end found it impossible to settle permanently in the city.

18.     In addition, similar to its neighbor, Portland, Oregon, the City of Vancouver has experienced a long history of preventing clubs catering to black and Hispanic from operating, especially in downtown.   There is a clear pattern and practice by the police department, the fire bureau, the WSLCB, and other regulatory agencies to irregularly inundate businesses that cater to blacks and Hispanics with enough regulatory attention that the businesses cannot operate.

19.     For example, in Portland, Oregon in 2004, La Von Van, a black man, bought LV's Sports Bar Restaurant and Lounge, several blocks north of the former site of the Cleo-Lillian Social Club. The business was a gathering spot for the local black community, even as the neighborhood around it became increasingly white. When Mr. Van first bought the business, the City refused to assist in his complaints of criminal activity in the neighborhood. However, in 2008, the City and OLCC turned their regulatory attention on the club. In 2012, the OLCC moved to suspend the bar's liquor license twice, citing a history of violations generated through inordinate regulatory attention. When he received the second notice of proposed suspension on October 31, 2012, Mr. Van closed the bar, citing the financial burden imposed by the OLCC. LV's Sports Bar Like Restaurant and Lounge was the last black owned bar in the Albina neighborhood. It was demolished shortly after

4 - COMPLAINT

KMP
KENNETH MITCHELL-PHILLIPS
ATTORNEY AT LAW
650 N.E. Holladay St., Suite 1600
Portland, Oregon 97232
Phone: 1-888-335-0161 | Fax: 971-231-2002

closing to make room for a luxury apartment building.

20.     In 2008, the Crown Room opened in Portland's Chinatown neighborhood, two blocks from where the Golden West Hotel once did business. The club presented a mix of music, including a hip-hop night every Saturday night. The hip-hop nights drew a mixed crowd with a plurality of young black people. The Crown Room received an inordinate amount of regulatory attention from the PPB, Neighborhood Involvement, the Fire Bureau, and OLCC under the direction of Steven Marks. Ultimately, a series of minor liquor violations led to a prolonged suspension, and the club was forced to close. The former owner of the Crown Room, a white man, continues to operate other nightclubs in the downtown vicinity profitably and without undue regulatory interference. None of those clubs, however, host hip-hop nights or cater to young black people.

21.     In March 2010, Beauty Bar, a small national chain of successful nightclubs, opened in downtown Portland. The venue hired a nationally recognized promoter named Chase Freeman, a black man, to host weekly dance nights on Saturday nights. Mr. Freeman followed the same successful formula he had used in cities such as New York and Atlanta to create a mix of dance music events featuring local and national DJs focused around hip-hop music. The formula was a success in the Portland Metro area as well, drawing a mixed crowd with a plurality of young black people. However, the PPB and Fire Bureau began focusing on the club as it became successful. Despite the absence of noise complaints or incidents of violence at the club, Portland officials again began focusing inordinate regulatory attention on it. The Fire Bureau cited the club twice for capacity violations and pressured the club to fire the promoter. The owners did so in late March 2012 and closed the club soon after.

22.     In March 2011, Samuel Thompson, a young, Portland black man, opened Seeznin's Bar & Lounge on 82nd Avenue in Portland. The bar catered to young black people. PPB and the OLCC immediately focused an inordinate amount of attention on the bar. In June 2011, a man was shot and killed in the parking lot across the street from the bar. The OLCC and PPB blamed the bar for the homicide. OLCC director Marks immediately issued excessive and crippling restrictions on Mr. Thompson's liquor license. Those restrictions made it impossible for Mr. Thompson to continue to operate the business profitably and he was forced to close. In 2011, there were four homicides on or very near 82nd Avenue. Seeznin's was the only establishment closed as a result.

23.     Similar to these examples, in Portland, Oregon, the Defendants have closed down many establishments that cater to blacks and Hispanics in downtown Vancouver Washington under

5 - COMPLAINT

KMP
KENNETH MITCHELL-PHILLIPS
ATTORNEY AT LAW
650 N.E. Holladay St., Suite 1600
Portland, Oregon 97232
Phone: 1-888-335-0161 | Fax: 971-231-2002

the auspices of necessary regulations. However, businesses that cater to non-Hispanic and non-black clientele do not receive the same regulatory attention.

24. In 1980, Washington had the highest rate of disproportionate minority representations in prisons. Today, studies have shown that facial neutral polices that have a disparate impact on people of color contribute significantly to disproportionalities in the criminal justice systems.

25. At this time, black people in Vancouver comprise approximately 3.4% of the population, but there are no black-owned clubs or bars in the city.

26. Hip-hop music is more than just a genre of music. It is the expression of an entire American culture—that of young, urban black and Hispanic people. It is rooted in African and African- American musical traditions: the African oral tradition, soul, jazz, gospel, and reggae. Hip-hop lyrics are concerned with the subjects that are most relevant for the community that creates it. As such, rap or hip-hop has been referred to as the "CNN for black people," filling a void left by the white media.

**B. Plaintiffs' Efforts to Open a Legal Business Catering to Vancouver's Black and Hispanic Community**

27. Mr. Kallimanis and Mr. Parra, are owners of a minority club and have been involved in numerous clubs in various states around the country during the past 30 years. They have owned or invested in over 20 of these clubs.

28. The Owners arrived new to Vancouver in November 2011 to open the Q, they invested approximately $500,000 in the club. They obtained all the appropriate licenses and permits to open this business, including a liquor license.

29. Being new to Vancouver, The Owners did not have any knowledge of problems in the area. They did not know the parole or probation statuses of potential club patrons. They did not know which promoters, clients, or venders had been "banned" by City officials or had been associated with illegal or gang activity.

30. The Owners oversaw club operations, assisted the manager, bar backs, wait staff and door personnel.

31. The Owners regularly had numerous certified security guards working various locations at the Q, including at the entrance, around the premises, and inside the club itself. Their

KMP
KENNETH MITCHELL-PHILLIPS
ATTORNEY AT LAW
650 N.E. Holladay St., Suite 1600
Portland, Oregon 97232
Phone: 1-888-335-0161 | Fax: 971-231-2002

security staff routinely "wanded" each patron with a metal detecting device and searched patrons' handbags for weapons.

**C.    Factual Allegations Demonstrating Civil Rights Violations and Conspiracy to Shut Down the Q.**

32.    All individual Defendants conspired and collectively agreed, expressly or tacitly, to put the Owners out of business because of the Owners' decision to serve a predominantly black and Hispanic clientele, with its cultural preferences including hip-hop music.  Individual defendants used each of their individual regulatory functions in a concerted effort to build a record they could eventually use to do so. They followed the same script and the same customs and practices that had successfully driven every similar black and Hispanic businesses out of the downtown Vancouver area for over 90 years, blame the nightclub for criminal activity in the vicinity, document trumped up noise complaints, apply inordinate regulatory attention to find *de minimus* fire code and liquor law violations.

33.    Throughout the life of the Q, the City, the OLCC and individual defendants attempted to connect black clubs featuring hip-hop music to criminal activity.  They documented every interaction that could conceivably be connected to the Q in an effort to create a record to put the club out of business, even when the interaction was so minor that the police would not ordinarily generate a report.

34.    The Q officially opened for business on or around January 29, 2015 and began operating a nightclub and lounge at 704 Main Street, Vancouver, Washington 98660.

35.    Throughout the course of 2015, the Defendants began to harass the Q by accusing their patrons of criminal activity, showing up during hours of business to harass Q's patrons, and wrongfully attempting to associate Q with any criminal activity or complaints in the downtown Vancouver area.  This significantly disrupted Q's business.

36.    In addition, C-Tran began constructing a bus rapid transit center, which blocked access to the rear exit of the Q.

7 - COMPLAINT

KMP
KENNETH MITCHELL-PHILLIPS
ATTORNEY AT LAW
650 N.E. Holladay St., Suite 1600
Portland, Oregon 97232
Phone: 1-888-335-0161 | Fax: 971-231-2002

37.     Subsequently, the Defendants, by and through their agents began notifying the Q that because of C-Tran's redevelopment project, Q could no longer meet the required assembly occupancy regulation and therefore the City would immediately begin enforcement proceedings to close Q's business.

38.     Despite Q's efforts to work with the Defendants to become compliant with the regulations, the Defendants would not work with Plaintiffs to solve the problem.  As a result, the Defendants shut the Q down.

39.     Not surprisingly, after Q was shut down, C-Tran discontinued its project.

**FIRST CLAIM FOR RELIEF**
**All Plaintiffs Against All Defendants**
**(42 U.S.C. §1981 – Race Discrimination)**

40.     Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

41.     Mr. Parra is a member of a racial minority and Mr. Parra and Mr. Kallimanis operated a black club in Vancouver, Washington.

42.     Defendants intentionally discriminated against Mr. Kallimanis and Mr. Parra because of his race based on the following:

a.     Defendants were aware of the discrimination and failure to take steps to improve; and/or

b.     Defendants' pattern of conduct was inexplicable on grounds other than race; and/or

c.     The gross disparity in treatment of white-owned or managed clubs versus black clubs; and/or

d.     The selective enforcement of regulations resulted in racial animus.

43.     Defendants deprived Mr. Kallimanis and Mr. Parra, as owners of a black club, and their corporation, the Q, of the same rights as white business owners to make and enforce contracts with patrons and promoters.

44.     Defendants acted with intent to discriminate against Plaintiff Mr. Kallimanis and Mr. Parra on the basis of their race and/or his status as a non-white citizen.

KMP
KENNETH MITCHELL-PHILLIPS
ATTORNEY AT LAW
650 N.E. Holladay St., Suite 1600
Portland, Oregon 97232
Phone: 1-888-335-0161 | Fax: 971-231-2002

45.     Defendants knew or should have known that their conduct violated clearly established statutory or constitutional rights against discrimination on account of race.

46.     As a direct and proximate result of the Defendants' violation of Plaintiffs' constitutionally guaranteed rights and their actions/inactions alleged herein, Plaintiffs suffered economic loss in the form of loss of investment, lost profits and loss of future business, in an amount to be proven at trial, but no less than $2,500,000, plus pre-judgment and post-judgment interest.

47.     As a direct and proximate result of Defendants' actions as alleged herein, Plaintiffs have suffered non-economic damages in the form of loss of reputation, bodily harm, emotional and mental distress, degradation, embarrassment, and humiliation for which Plaintiff seeks compensation in an amount to be proven at trial, but no less than $5,000,000.

48.     Defendants' actions herein were intentional, willful, and with reckless disregard to Plaintiffs' rights. Such conduct exceeded the bounds of social toleration and is of the type that punitive damages deter. Plaintiff thereby requests an award of punitive damages in the amount of $15,000,000.

49.     Plaintiffs have hired legal counsel to prosecute their claim and are entitled to reasonable attorneys' fees and costs incurred, including expert witness fees, pursuant to 42 U.S.C. § 1988.

### SECOND CLAIM FOR RELIEF
**All Plaintiffs Against All Defendants**
**(42 U.S.C. § 1983 – Violation of 14th Amendment Procedural Due Process – Liberty Interest)**

50.     Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

51.     Plaintiffs have a liberty interest and right to due process of law guaranteed by the Fourteenth Amendment.

52.     Pursuant to the Fourteenth Amendment, Plaintiffs have the right to engage in a chosen occupation/business, the right to be free from unwarranted damage to reputation, and the right to be free from tortious interference by government officials with their existing contractual and business relationships.

53.     Defendants, acting under color of state law and with deliberate indifference, individually deprived Plaintiffs of their liberty interests without procedural due process by the conduct described in above.

KMP
KENNETH M. SCHELL & PHILLIPS
ATTORNEYS AT LAW
650 N.E. Holladay St., Suite 1600
Portland, Oregon 97232
Phone: 1-888-335-0161 | Fax: 971-231-2002

54.     Such deprivation harmed Plaintiffs, Mr. Kallimanis' and Mr. Parra's, ability to work in their chosen occupation and area of business, damaged their reputation, and grossly interfered with their contractual and business relationships.

55.     Defendant City's policy, practice, custom or decision to treat clubs differently based on race of ownership or clientele was the moving force behind Plaintiffs being deprived of their procedural due process rights.

56.     As demonstrated by the actions described above, all Defendants, by agreement and concerted action, conspired to, intended to, and did in fact deprive Plaintiffs of their rights under the Fourteenth Amendment to the United States Constitution.

57.     As a direct and proximate result of Defendants' violation of Plaintiffs' constitutionally guaranteed rights and their actions/inactions alleged herein, Plaintiffs have suffered and are entitled to recover compensatory and punitive damages as described above, the allegations of which are incorporated herein.

58.     Plaintiffs have hired legal counsel to prosecute their claim and are entitled to reasonable attorneys' fees and costs incurred, including expert witness fees, pursuant to 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF
### By All Plaintiffs Against All Defendants
### (42 U.S.C. § 1983 – Violation of 14th Amendment Procedural Due Process – Property Interest)

59.     Plaintiffs incorporate and restate each of the above paragraphs as if fully set forth herein.

60.     Plaintiffs have a property interest and right to due process of the law guaranteed by the Fourteenth Amendment in their position as citizens and corporations of the United States. Plaintiffs had a protected property interest in their business and its related economic endeavors.

61.     By the conduct described in above, including intentionally denying Plaintiffs the right to operate their business, Defendants, acting under color of state law, and with deliberate indifference, deprived Plaintiffs of their property interests without procedural due process. Such deprivation resulted in the loss of Plaintiffs' business, reputation, and goodwill.

62.     Such deprivation harmed Plaintiffs Mr. Kallimanis and Mr. Parra's ability to work in their chosen occupation and area of business, damaged his reputation, and grossly interfered with

KMP
KENNETH MITCHELL-PHILLIPS
ATTORNEY AT LAW
650 N.E. Holladay St., Suite 1600
Portland, Oregon 97232
Phone: 1-888-335-0161 | Fax: 971-231-2002

their contractual and business relationships.

63.     The acts of the Defendants were carried out in furtherance of a longstanding, official policy, practice, custom or decision of Defendant City to treat black and Hispanic clubs differently than clubs catering to non-black patrons, which continues to the present. By carrying out that policy, practice custom or decision, Defendant City has discriminated unlawfully against black clubs. This policy, practice, custom or decision amounts to deliberate indifference to Plaintiffs' liberty right under the due process clause.

64.     As demonstrated by the actions described above, all Defendants, by concerted action and agreement, conspired to, intended to, and did in fact deprive Plaintiffs of their rights due process rights under the Fourteenth Amendment to the United States Constitution.

65.     As a direct and proximate result of Defendants' violation of Plaintiffs' constitutionally guaranteed rights and their actions/inactions alleged herein, Plaintiffs have suffered and are entitled to recover compensatory and punitive damages as described above, the allegations of which are incorporated herein.

66.     Plaintiffs have hired legal counsel to prosecute their claim and are entitled to reasonable attorneys' fees and costs incurred, including expert witness fees, pursuant to 42 U.S.C. § 1988.

### FOURTH CLAIM FOR RELIEF

**All Plaintiffs Against All Defendants**
**(42 U.S.C. § 1983 – Violation of Fourteenth Amendment Equal Protection)**

67.     Plaintiffs incorporate and restate each of the above paragraphs as if fully set forth herein.

68.     Plaintiffs have a right to equal protection under the law without regard to race as guaranteed by the Fourteenth Amendment in their position as citizens and corporations of the United States.

69.     By the conduct described above, Defendants acting under color of state law, acted with intent or purpose to racially discriminate against Plaintiffs by depriving Plaintiffs of their right to equal protection by unlawfully treating Plaintiffs differently than similarly situated clubs that are not owned by or do not cater to a black clientele.

70.     Such racially disparate treatment resulted in the loss of Plaintiffs' business, reputation,

KMP
KENNEDY McCOULLOUGH-PHILLIPS
ATTORNEYS AT LAW
650 N.E. Holladay St., Suite 1600
Portland, Oregon 97232
Phone: 1-888-335-0161 | Fax: 971-231-2002

and goodwill, as described in above.

71.     Such racially disparate treatment was without adequate justification and resulted in substantial economic and non-economic harm to Plaintiffs.

72.     Individual Defendants' actions were carried out in furtherance of a longstanding, official policy, practice, custom or decision of Defendants treating black clubs differently than clubs catering to non-black patrons that continues to the present. By carrying out that policy, practice custom or decision, the City has discriminated unlawfully against black clubs in violation of the Equal Protection Clause.

73.     Defendants City's policy, practice, custom or decision to treat clubs differently based on race of ownership or clientele was the moving force behind Plaintiffs being deprived of their right to Fourteenth Amendment right to equal protection.

74.     As demonstrated by the actions described in paragraphs above, all Defendants, by concerted action and agreement, conspired to, intended to, and did in fact deprive Plaintiffs of their Fourteenth Amendment right to equal protection.

75.     As a direct and proximate result of Defendants' violation of Plaintiffs' constitutionally guaranteed rights and their actions/inactions alleged herein, Plaintiffs have suffered and are entitled to recover compensatory and punitive damages as described in Paragraphs above, the allegations of which are incorporated herein.

76.     Plaintiffs have hired legal counsel to prosecute their claim and are entitled to reasonable attorneys' fees and costs incurred, including expert witness fees, pursuant to 42 U.S.C. § 1988.

### FIFTH CLAIM FOR RELIEF
**All Plaintiffs Against All Defendants**
**(42 U.S.C. § 1983 – First Amendment Free Speech/Expression)**

77.     Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

78.     Plaintiffs have a protected right to free speech and expression as guaranteed by the First Amendment to play hip-hop music and hold musical events at which hip-hop artists perform without restriction based on content and/or viewpoint.

79.     Plaintiffs' club specialized in playing hip-hop music and curating hip-hop events.

12 - COMPLAINT

KMP
KENNETH MITCHELL-PHILLIPS
ATTORNEY AT LAW
650 N.E. Holladay St., Suite 1600
Portland, Oregon 97232
Phone: 1-888-335-0161 | Fax: 971-231-2002

80.   By the conduct described above, Defendants, acting under color of state law deprived Plaintiffs of their First Amendment rights to freedom of speech and expression. Such deprivation resulted in the loss of Plaintiffs' business, reputation, and goodwill.

81.   The conduct of Defendants was not content-neutral as Defendants did not subject similarly-situated clubs that did not play this type of music to such illegal actions, regardless of noise or public safety reports or actual decibel levels recorded.

82.   Defendants' actions had the result of chilling Plaintiffs' speech and curtailing Plaintiffs' conduct as Plaintiffs were forced to attempt to change the format of the club and then was ultimately forced out of business. Such deterrence was a substantial or motivating factor for Defendants' actions.

83.   Individual Defendants' actions were carried out in furtherance of a longstanding, official policy, practice, custom or decision of Defendant City to treat black clubs featuring hip- hop differently than clubs catering to a non-black audience playing other types of music. By carrying out that policy, practice custom or decision, the City has discriminated unlawfully against black clubs. This policy, practice, custom or decision amounts to a violation of Plaintiffs' right to free expression under the First Amendment.

84.   Defendant City, through the enforcement of its official policy, practice, or custom or decision described above, discriminated against Plaintiffs' right to free speech and expression on a content-neutral and/or viewpoint-neutral basis.

85.   Defendant City's above-described policy and long-standing practice of treating clubs differently based on type of music played was the moving force behind Plaintiffs being deprived of their right to free speech and expression.

86.   As demonstrated by the actions described in Paragraphs above, all Defendants, by concerted action and agreement, conspired to, intended to, and did in fact deprive Plaintiffs of their First Amendment right to freedom of speech and expression.

87.   As a direct and proximate result of Defendants' violation of Plaintiffs' constitutionally guaranteed rights and their actions/inactions alleged herein, Plaintiffs have suffered and are entitled to recover compensatory and punitive damages as described in above, the allegations of which are incorporated herein.

88.   Plaintiffs have hired legal counsel to prosecute their claim and are entitled to reasonable attorneys' fees and costs incurred, including expert witness fees, pursuant to 42 U.S.C. § 1988.

KMP

KENNETH-MITCHELL-PHILLIPS
ATTORNEY AT LAW
650 N.E. Holladay St., Suite 1600
Portland, Oregon 97232
Phone: 1-888-335-0161 | Fax: 971-231-2002

## SIXTH CLAIM FOR RELIEF

### All Plaintiffs Against All Defendants
### (42 U.S.C. § 1983 – First Amendment Freedom to Associate)

89.   Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

90.   Plaintiffs have a protected right guaranteed by the First Amendment to associate freely with artists who perform hip-hop music catering to the black community and attracting a predominantly black audience, and patrons who enjoy hip-hop music.

91.   By the conduct described above, in which Defendants acted to close the Q permanently, while allowing clubs with similar issues but serving a predominantly white clientele and not featuring hip-hop music to remain in business, those Defendants deprived Plaintiffs of their First Amendment right to freedom of association.

92.   Defendants' actions had the result of curtailing Plaintiffs' association with their black clientele. This deterrence was a substantial or motivating factor for Defendants' actions.

93.   Such deprivation resulted in the loss of Plaintiffs' business, reputation, and goodwill.

94.   Such racially disparate treatment was without adequate justification and resulted in substantial economic and non-economic harm to Plaintiffs.

95.   The conduct of Defendants, acting under color of state law was carried out in furtherance of a longstanding, official policy, practice, custom or decision of Defendant City of treating black clubs differently than clubs catering to non-black patrons which continues to the present. By carrying out that policy, practice, custom or decision, the City has discriminated unlawfully against black clubs. This policy, practice, custom or decision amounts to deliberate indifference to Plaintiffs' liberty right under the due process clause.

96.   Defendants' policy, practice, custom or decision to treat clubs differently based on race of ownership or clientele was the moving force behind the deprivation of Plaintiffs' right to freedom of association under the First Amendment.

97.   As demonstrated by the actions described above, all Defendants, except the City, by concerted action and agreement, conspired to, intended to, and did in fact deprive Plaintiffs of their First Amendment right to freedom of association.

98.   As a direct and proximate result of Defendants' violation of Plaintiffs' constitutionally guaranteed rights and their actions/inactions alleged herein, Plaintiffs have suffered and are entitled

KMP

KENNETH MITCHELL-PHILLIPS
ATTORNEY AT LAW
650 N.E. Holladay St., Suite 1600
Portland, Oregon 97232
Phone: 1-888-335-0161 | Fax: 971-231-2002

to recover compensatory and punitive damages as described above, the allegations of which are incorporated herein.

99.  Plaintiffs have hired legal counsel to prosecute their claim and are entitled to reasonable attorneys' fees and costs incurred, including expert witness fees, pursuant to 42 U.S.C. § 1988.

## SEVENTH CLAIM FOR RELIEF

### All Plaintiffs Against All Defendants
### (42 U.S.C. § 1985(3) – Conspiracy to Interfere with Civil Rights)

100.  Plaintiffs incorporate and restate each of the above paragraphs as if fully set forth herein.

101.  All Defendants except the City conspired to deprive Plaintiffs of the equal protection of the laws and/or of equal privileges and immunities under the laws in furtherance of its goal to harm Plaintiffs and their interests as alleged supra.

102.  Defendants' actions were motivated by a race-based animus.

103.  Defendants committed acts in furtherance of their conspiracy including:

   a.  Perpetuating a pretext of nuisance complaints and other disturbances with the improper purpose of increasing police presence

   b.  Writing police reports without properly investigating allegations against Plaintiff;

   c.  Suspending Plaintiffs' liquor license; and

   d.  Taking steps to effectively shut down Plaintiffs' business.

104.  Plaintiffs were deprived of the following constitutional rights: freedom of association, freedom of speech and/or expression, due process, and freedom from discrimination based on race.

105.  As a direct and proximate result of Defendants' violation of Plaintiffs' constitutionally guaranteed rights and their actions/inactions alleged herein, Plaintiffs have suffered and are entitled to recover compensatory and punitive damages as described in Paragraphs above, the allegations of which are incorporated herein.

106.  Plaintiffs have hired legal counsel to prosecute their claim and are entitled to reasonable attorneys' fees and costs incurred, including expert witness fees, pursuant to 42 U.S.C. § 1988.

15 - COMPLAINT

KMP
KENNETH MITCHELL-PHILLIPS
ATTORNEY AT LAW
650 N.E. Holladay St., Suite 1600
Portland, Oregon 97232
Phone: 1-888-335-0161 | Fax: 971-231-2002

## EIGHTH CLAIM FOR RELIEF

**All Plaintiffs Against All Defendants**
**(42 U.S.C. § 1986 – Action for Neglect to Prevent Interference with Civil Rights)**

107. Plaintiffs incorporate and restate each of the above paragraphs as if fully set forth herein.

108. All Defendants held knowledge of said conspiracy as alleged in the Seventh Claim for Relief, had power to prevent or aid in preventing such conspiracy, and neglected or refused to do prevent such conspiracy. As a result, Plaintiffs and their interests were harmed and they were deprived of the equal protection of the laws and/or of equal privileges and immunities under the laws.

109. As a direct and proximate result of Defendants' violations of Plaintiffs' constitutionally guaranteed rights and their actions/inactions alleged herein, Plaintiffs have suffered and are entitled to recover compensatory and punitive damages as described in Paragraphs above, the allegations of which are incorporated herein.

110. Plaintiffs have hired legal counsel to prosecute their claim and are entitled to reasonable attorneys' fees and costs incurred, including expert witness fees, pursuant to 42 U.S.C. § 1988.

## NINTH CLAIM FOR RELIEF

**All Plaintiffs Against Defendant City of Portland**
**(42 U.S.C. § 2000d—Civil Rights Act Title VI)**

111. Plaintiffs incorporate and restate each of the above paragraphs as if fully set forth herein.

112. The budget of Defendants City and C-Tran includes federal funds.

113. As described in above, Defendants City and C-Tran treated Plaintiffs less favorable than similarly-situated clubs and their owners of non-black establishments, including those that did not play hip-hop music. Defendants City and C-Tran subjected Plaintiffs to increased scrutiny and additional penalties in comparison to other similarly situated clubs.

114. Defendants City and C-Tran's discriminatory actions adversely impacted Plaintiffs by

KMP
KENNETH MITCHELL-PHILLIPS
ATTORNEY AT LAW
650 N.E. Holladay St., Suite 1600
Portland, Oregon 97232
Phone: 1-888-335-0161 | Fax: 971-231-2002

resulting in the loss of their business and the ability to work in their chosen occupation/business area, damaging their reputations within the community, and grossly interfering with their contractual and business relationships.

115. Defendants City and C-Tran's conduct resulted in near-immediate shut-down of Plaintiffs' business while similarly-situated clubs with similar issues or or safety concerns remained open. There is no substantial legitimate justification for this disparity except for race-based animus.

116. As a direct and proximate result of Defendants' violation of Plaintiffs' constitutionally guaranteed rights and their actions/inactions alleged herein, Plaintiffs have suffered and are entitled to recover compensatory and punitive damages as described in Paragraphs above, the allegations of which are incorporated herein.

117. Plaintiffs have hired legal counsel to prosecute their claim and are entitled to reasonable attorneys' fees and costs incurred, including expert witness fees, pursuant to 42 U.S.C. § 1988.

### TENTH CLAIM FOR RELIEF

#### All Plaintiffs Against Individual Defendants
#### (Common Law—Intentional Interference with Economic Relations)

118.    Plaintiffs incorporate and restate each of the above paragraphs as if fully set forth herein.

119.    Plaintiffs were engaged in developing and establishing a hip-hop club in Portland dedicated to serving the City's black and multi-cultural communities. They had obtained a liquor license on or around January 1, 2015 and opened their club, the Q, on or around January 11, 2015.

120.    In the months following the opening of the Q, the Defendants interfered with Plaintiffs business relations with patrons, customers, the landlord, providers and others by the improper means of providing or causing to be provided false, materially misleading, and/or defamatory information concerning Plaintiffs, perpetuating a pretext of noise, occupancy and other complaints and disturbances and other conduct described above, and with the with the improper purpose of shutting down Plaintiffs business.

121.    As a result of Defendants' intentional and improper interference, business at the Q was repeatedly disrupted. Defendants used its created pretext of complaints to suspend the Q's liquor license, which subsequently forced the club's immediate and permanent closure. Plaintiffs were deprived of the economic benefits they were to derive from their established business.

KMP
KENNETH MITCHELL-PHILLIPS
ATTORNEY AT LAW
650 N.E. Holladay St., Suite 1600
Portland, Oregon 97232
Phone: 1-888-335-0161 | Fax: 971-231-2002

122.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs have suffered economic damages including but not limited to lost profits, and is entitled to a monetary award in an amount to be determined, plus prejudgment interest, by a jury.

## ELEVENTH CLAIM FOR RELIEF
### All Plaintiffs Against Individual Defendants
### (Common Law—Intentional infliction of emotional distress)

123.    Plaintiffs incorporate and restate each of the above paragraphs as if fully set forth herein.

124.    Defendants' acts were intended to inflict severe emotional distress on Plaintiff Mr. Kallimanis and Mr. Parra. Alternatively, such severe emotional and mental distress was certain or substantially certain to result from Defendants' conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against all Defendants in the total amount of $22,500,000, to include the following:

For economic damages in the amount of $2,500,000.

For non-economic damages in the amount of $5,000,000.

For punitive damages in the amount of $15,000,000.

For Plaintiffs' costs of suit and his reasonable attorney fees, costs, and expert witness fees pursuant to 42 U.S.C. § 1988 and ORS 659A.885.

For pre-judgment and post-judgment interest, as appropriate, on all amounts due to Plaintiff as a result of this action.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

18 - COMPLAINT

KMP
KENNETH THOMPSON MITCHELL PHILLIPS
ATTORNEY AT LAW
650 N.E. Holladay St., Suite 1600
Portland, Oregon 97232
Phone: 1-888-335-0161 | Fax: 971-231-2002

For such other relief as the Court may deem just. **Such other and further relief as the Court deems appropriate.**

DATED this 7th day of April .

Respectfully submitted,

THE LAW OFFICES OF KEN MITCHELL-PHILLIPS, P.C.
an Oregon professional corporation

By:    /s/Kenneth S. Mitchell-Phillips, Sr.
Kenneth S. Mitchell-Phillips, Sr.
WSBA No.: 47720
info@lawofficesofkenmitchellphillips.com
650 N.E. Holladay Street, Suite 1600
Portland, Oregon 97232
Phone: 888-335-0161
Fax: 971-231-2002
Of Attorney for Plaintiffs

KMP
KENNETH MITCHELL-PHILLIPS
ATTORNEY AT LAW
650 N.E. Holladay St., Suite 1600
Portland, Oregon 97232
Phone: 1-888-335-0161 | Fax: 971-231-2002